RINGEN STOVE COMPANY, Appellant, v. W. H. BOWERS, Defendant, and JOHN P. HORNISH, Assignee, Intervener.

**Assignee for Creditors:** DEFENDING ATTACHMENT AGAINST DEBTOR. Under Code, section 3084, authorizing an assignee for creditors to sue in his own name for assets of the estate, and generally to do whatever the debtor might have done in the premises, and section 3888, providing that defendant in an attachment may sue on the attachment bond by way of counterclaim and recover damages as in the original action, an assignee may defend in attachment against his assignor, by petition of intervention alleging the wrongful suing out of attachment, and asking damages on the attachment bond, and be joined in his prayer for damages by defendant, who also answers and pleads a counterclaim.

**COUNTERCLAIM:** *Intervention.* Four days after suit in attachment was begun, defendant therein made an assignment. His assignee filed a petition of intervention, alleging the wrongful suing out of the attachment and asked for damages on the bond, and was joined in his prayer by defendant, who pleaded a counterclaim. *Held,* that as defendant and intervenor joined in their prayer for relief, the right to prosecute the counterclaim was given by Code, section 3888, providing that defendant in attachment may sue on

the attachment bond by way of counterclaim and recover damages as in the original action.

**Interventions: DELAY BY DEFINED.** Code, section 3595, relating to intervention, providing that the court shall determine on the intervention at the same time the action is decided, and the intervenor has no right to delay, refers to a delay of trial, and not to such delay as may result from an immediate trial; and where intervenor, by his action does not occasion any postponement, he is not within the prohibition of the statute.

**LEAVE TO FILE PETITION.** Overruling a motion to strike a petition of intervention is tantamount to granting leave to file it.

**CONTESTING MORTGAGE RECOGNIZED IN DEED OF ASSIGNMENT.** Where an assignment contains a clause to the effect that the conveyance is subject to a certain mortgage therein named, the assignee in accepting the trust, and the creditors in filing their claims, are not estopped from contesting the validity of such mortgage, and the fact that such clause is included in the deed does not affect its validity.

**Wrongful Attachment: WHAT MUST BE PROVEN.** Under Code, section 3887, providing that, in an action on an attachment bond, plaintiff therein may recover, if the attachment was wrongfully sued out, without reasonable cause, in order to recover on attachment bond plaintiff need only show that the ground alleged in the petition is untrue, and that defendant had no reasonable cause to believe it to be true, and need not show that all the statutory grounds on which the writ could issue are untrue.

**Costs.** Costs definitely fixed by law are to be taxed by the court, and there is no occasion to submit the amount to be allowed to the jury.

**Motion and Answer: WAIVER.** A motion to strike an answer and counterclaim is not waived by answering the counterclaim, where the same point was raised in the answer to the counterclaim as was raised in the motion to strike.

*Appeal from Lee District Court.*—HON. HENRY BANK, JR., Judge.

SATURDAY, OCTOBER 7, 1899.

ACTION on account, in which the petition was filed, and the writ of attachment levied on the goods of the defendant, May 1, 1897. Four days later he made a general assignment for the benefit of his creditors to John P. Hornish. The latter filed a petition of intervention, October 13, 1897, in

which he alleged the wrongful suing out of the writ of attachment, the assignment, and asked judgment for damages on the attachment bond against the plaintiff and its bondsmen. On the 30th day of the same month the defendant answered, admitting the account sued on, and alleged the wrongful suing out of the writ, the assignment to Hornish, and joined the assignee in his prayer for relief. December 3d the plaintiff moved for judgment against Bowers, and also to strike the petition of intervention, on the ground, in substance, that intervener was a mere intermeddler. This motion was overruled December 14, 1897, and on the following day the defendant filed an amended and substituted answer and counterclaim, joining in intervener's prayer. March 7, 1898, the plaintiff again moved for judgment and to strike the substituted answer and counterclaim. This was overruled, and on May 17th the plaintiff answered the petition of intervention. Recovery was had by intervener on the bond, and plaintiff appeals.—*Affirmed.*

*W. J. Roberts* for appellant.

*W. B. Collins* and *James C. Davis* for appellees.

LADD, J.—The assignee for the benefit of creditors is not only a trustee for them, but for the assignor as well, who retains a contingent interest in the estate. The balance remaining after the satisfaction of debts and expenses of administration belongs to the assignor. His interest may be likened to that of the mortgagor of personal property. He is interested, then, in the minimum allowance being made on claims filed, and in the maximum amount being received on debts due and for goods sold. The interest of the assignee, as the trustee of both debtor and creditor, to this extent is identical with that of the assignor. Indeed, this is always true, save when the assignee peculiarly represents the creditor in attempting to remedy a prior wrong of the debtor, as in having a conveyance set aside as fraudulent. *Schaller v.*

*Wright,* 70 Iowa, 668. The property, however, is in *custodia legis,* and the assignee, an officer of the court, subject to its supervision. *Shoe Co. v. Mercer,* 84 Iowa, 537. That the chose in action against the plaintiff for wrongfully suing out the writ of attachment passed to the assignee under the general assignment is not questioned, and by section 3084 of the Code he is expressly authorized to "sue for and recover in his own name everything belonging or appertaining to said estate and generally do whatever the debtor might have done in the premises." The very evident purpose of this section is to confer on the assignee the same rights and remedies relating to the estate as were possessed by the assignor. The remedy is on the attachment bond, and by section 3888 the defendant "may in his discretion sue thereon by way of counterclaim, and in such case shall recover damages as in the original action." Is there any reason why the assignee should not be permitted to defend in the action instead of the assignor, who was sued, or with him, and avail himself of the same remedies? He has precisely the same interest in the litigation. In *Dunham v. Greenbaum,* 56 Iowa, 303, the court said: "It is very plain that, if the claims in the hands of the assignee may be enforced in the attachment actions, thereby the plaintiff's judgments will be wholly defeated, or reduced in part, or judgments for damages may be recovered against the plaintiffs. In either case, the benefits ought to go to the estate held by the assignee. The assignee is entitled to the same rights and remedies for the enforcement of these claims as were held, before the assignment, by the defendants. * * * If the claims be established to any extent, the estate which he represents will be benefited thereby. If there shall be judgments against plaintiffs for sums greater than the amounts of the debts of the defendants, the estate will be entitled to the proceeds gained therefrom." The appellant undertakes to distinguish that case from the one at bar on the ground that the defendant had there

pleaded a counterclaim before the petition of intervention had been filed, while in this case the defendant afterwards pleaded a counterclaim and joined in the prayer of the intervening assignee for damages.    Section 3594 of the Code authorizes "any person who has an interest in the matter in litigation, in the success of either of the parties to action, or against both, may become a party to an action between other persons, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendant in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the cause, and before the trial commences."    It will be observed that the intervention may be had before issue joined, and we think it is quite immaterial in what order the pleadings were placed on file, and whether the defendant joined the intervener or *vice versa*.    They had joined in the prayer for relief before the motion to strike had been filed, and we think had the right to have the counter-claim adjudicated in this action.    Apart from the order in which the pleadings were filed, the case of *Dunham v. Greenbaum* is precisely in point.    The plaintiff was not deprived by the procedure of a hearing, but the ruling simply required the issue as to the wrongfulness of its action in suing out the writ to be adjudicated in the very court whose jurisdiction it had invoked.    This was in promotion of justice, and should be upheld.

II.    It is said that in overruling the motion for judgment delay was occasioned.    Section 3595 of the Code requires that "the court shall determine upon the intervention at the same time the action is decided, and the intervener have no right to delay."    This evidently refers to a delay of trial, and not to such delay as may result from an immediate trial.    A trial might postpone the rendition of judgment, but if the intervener, by his action, does not occasion any postponement, he is not

within the prohibition of this statute. The authorities relied upon by the appellant are not in point. In *Lee v. Elevator Co.*, 42 Iowa, 36, the petition of intervention was filed after the settlement. In *Teachout v. Railway Co.*, 75 Iowa, 728, and *Dupont & Co. v. Amos*, 97 Iowa, 484, a continuance would have resulted. There is no showing that any postponement was made necessary because of the intervention.

III. It is asserted that the counterclaim cannot be maintained, for that the intervener did not own the cause of action at the time suit was begun. This counterclaim was pleaded under the special provision of section 3888 of the Code. The right of action accrued upon the filing of the petition. *Reed v. Chubb*, 9 Iowa, 178. In *Rumsey v. Robinson*, 58 Iowa, 225, the suit was brought after the general assignment to Foster, and the claim for damages was assigned by Foster to the defendants. As Foster's claim was procured after the suit was begun, it was held that the counterclaim could not be maintained thereon. The case is not in point, though some language used may tend to support appellant's contention. As the defendant and intervener join in their prayer for relief, the right to prosecute the counterclaim is that expressly given by the above section of the Code.

IV. The deed of assignment of Hornish contained this clause: "Subject to a mortgage heretofore given to the Keokuk Bank, Keokuk, Iowa." Without that clause, the conveyance would have been subject to all valid prior liens. *Meyer v. Evans*, 66 Iowa, 184; *In re Windhorst*, 107 Iowa, 58; *Smith v. Seed Co.*, 109 Iowa, 51. If then, the mortgage was valid, the insertion of the clause added nothing, and did not detract from the deed. The particular objection is that the assignee in accepting the trust, and the creditors in filing their claims, might be estopped from contesting the validity of the mortgage. We are of opinion that it would not have that effect. The deed declared "the purpose and intention to be to make an assignment for the benefit of

all creditors." Such a conveyance of property other than that exempt was upheld in *Bradley v. Bischel,* 80 Iowa, 82. See *Perry v. Vezina,* 63 Iowa, 26. In *Shoe Co. v. Mercer, supra,* fictitious claims were included in the list of creditors attached to the deed, and the assignee was held not to be estopped from contesting their validity. In *Schaller v. Wright,* 70 Iowa, 668, the assignee was adjudged not to be estopped from insisting upon the fraudulent character of a mortgage executed prior to the assignment. The appellant relies on *Freeman v. Auld,* 44 N. Y. 50, in which the grantee in a conveyance made subject to a prior mortgage was adjudged to be estopped from questioning the consideration or validity. This was put on the grounds that, by accepting the conveyance, the grantee admitted and agreed that the mortgage was a lien on the property for the amount specified, and that this must necessarily have been taken into consideration in fixing the purchase price. Not so with the assignee, who receives the property merely as trustee, without other consideration than his obligation to reduce it to money and distribute it to the creditors. The case of *Grant v. Chapman,* 38 N. Y. 293, tends to support this view; and it was there said, relating to a provision in the deed of assignment authorizing the amount of an attachment lien, if found valid, to be paid, that "a provision in mere affirmance of the legal obligations of the assignee, authorizing him in terms to do precisely what the law, if the assignment was silent on the subject, would require him to do, cannot affect the validity of the instrument." No claim is made that the mortgage to this bank was fraudulent, or that it was executed in connection with the deed of assignment. We are satisfied that the assignee who receives the deeds, including such a clause, should not be estopped from asserting the fraudulent character of the mortgage, and that including it cannot affect the validity of an assignment made for the benefit of creditors.

V. The ground for suing out the writ of attachment was that Bowers was about to dispose of his property with intent to defraud his creditors. There are eleven others enumerated in section 3878 of the Code. The court directed the jury to allow damages if it appeared that the ground alleged was untrue, and that the plaintiff had no reasonable cause to believe it true. The appellant insists that the burden was upon the defendant and intervener, in order to establish the wrongful suing out of the writ of attachment, to show that none of the twelve statutory grounds enumerated were true, and that the plaintiff had no reasonable cause so to believe. In other words, his position is that a person in suing out a writ of attachment may allege any of the grounds, and take his chance on the defendant being able to prove all of them false. It has been held that one or more of such statutory grounds must be alleged, else the issuance of the writ is without jurisdiction. *Lobenstein v. Hymson,* 90 Tenn. Sup. 606 (18 S. W. Rep. 250). It would seem, then, that the writ has for its basis the specific allegation of the petition, and that, if that be proven untrue, it would not be reasonable to suppose that some other might be found which was true. We are of opinion, however, that section 3887 of the Code is decisive: "In an action on such bond, the plaintiff therein may recover, if he shows that the attachment was wrongfully sued out, and that there was no reasonable cause to believe the ground upon which the same was issued to be true." Very clearly the last clause limits the investigation to the very grounds stated in the petition. We do not overlook the case of *Painter v. Munn,* 117 Ala. 322 (23 South. Rep. 83). The statute of Alabama differs somewhat from ours. There, to warrant recovery on the bond, the writ must have been sued out wrongfully, and the court held, to establish this, it must affirmatively appear that none of the statutory grounds are true, whether averred or not. The above section seems to preclude such a conclusion, even were we inclined to adopt it.

VI. The district court taxed all the costs, save that of filing the petition, serving the original notice, copy fees, and the entry of judgment, to the defendant. The appellant says that he should be required to pay only the costs accruing in the suit on the bond, and, if these are recoverable, they should have been included in the counterclaim. In this we do not concur. The costs are definitely fixed by law, and there is no occasion to submit the amount to be allowed to a jury. Those of levying the writ and selling the property were unnecessary, if the writ of attachment was wrongfully sued out. They are to be taxed, like the attorney's fees, by the court.

VII. The appellee urged that the plaintiff had waived its motion to strike by answering the counterclaim. There was no waiver, as the same point was raised in the answer. The appellant suggests that the petition of intervention was filed without leave. Over-ruling the motion to strike was tantamount to granting leave. *Williams v. Insurance Co.,* 50 Iowa, 563; *Rumsey v. Robinson,* 58 Iowa, 230.—AFFIRMED.